|  | UNITED STATES DISTRICT COURT |
|---|---|
|  | DISTRICT OF PUERTO RICO |

| WILSON PADILLA-MORALES, | |
|---|---|
| Plaintiff, | Civil No. 04-2276(JAF) |
| v. | |
| THE SHELL COMPANY (PUERTO RICO), et al., | |
| Defendants. | |

**O R D E R**

A hearing for a Petroleum Marketing Practices Act ("PMPA") injunction, requiring Wilson Padilla to surrender his Luquillo Select Shell gasoline station and convenience store to Shell, was held on October 20, 2005.  See Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2806.

Having heard the evidence, and having made the corresponding credibility assessments, the court finds as follows:

1.   There is no question that Wilson Padilla is a controversial franchisee who signed a franchise agreement and later sued Shell reneging on a number of franchise terms and conditions over the financial supervision by Shell of the franchise agreement.  Padilla claims that certain provisions in the franchise agreement are in conflict with Puerto Rico law, 23 L.P.R.A. §§ 1101-1135.

2.   In addition to suing Shell on the franchise contract, Padilla claimed the benefit of arbitration under the franchise agreement.  This was denied by Shell.

3.   While the legal dispute outlined above was in progress, Padilla had trouble of sorts paying Shell for the gasoline and related products.  Typically, gasoline is delivered to franchisees payable cash on delivery ("COD").  Shell's rule is that if the tank truck arrives at the gas station to deliver fuel and the payment is not available, delivery is not made.

In this case, however, Shell extended credit to Padilla by giving him the opportunity of getting one tank-truck delivery on credit. Upon receiving the next delivery, Padilla would pay for the previous one.  This arrangement is known as a load-to-load delivery basis.

In addition, other rules regarding payment apply.  For example, COD deliveries cannot be paid in cash currency.  Payment by check is the only option.  However, if a franchisee fails to honor a check because of lack of sufficient funds, then Shell places the franchisee on a "hard-cash basis," requiring payment by certified or manager's check.

Padilla was placed on a "hard-cash basis" on two occasions, in October 2003 and in May 2004.  In October 2003, Shell granted Padilla a payment plan for the payment of a $13,290.20 debt in three equal payments of $4,430.07.  Padilla fully paid this balance.

In May 2004, Padilla was once again placed on a "hard-cash basis."   It so happened that on May 3, 2004, Padilla received gasoline amounting to $16,330.50.  He paid it by check upon receiving

the next load on May 10 (load-to-load delivery basis).  The check issued by Padilla bounced for lack of funds.  By May 17, 2004, an additional gasoline delivery was made. Padilla paid for the previous May 10 delivery.  Two invoices remained outstanding: The May 3 and May 17 deliveries.

A Shell representative spoke to Padilla.  He was placed on "hard-cash basis."  No additional product would be delivered after May 17 unless he paid all outstanding Shell invoices, amounting to approximately $35,000.

On May 21, 2004, a collection letter was delivered.  Padilla promised to pay in full.  Padilla secured manager's checks amounting to the $35,000 due and owing, represented this information to Shell, and ordered an additional delivery of the product.  Delivery was promised for June 2, 2004.  No deliveries were made earlier because of the long Memorial Day weekend.  By May 27, the station ran out of gasoline.

On June 1, 2004, a termination letter was served on Padilla, requesting rescission of the franchise agreement based on three grounds: (a) the gasoline station ran out of gas; (b) lack of payment; and (c) failure to comply with contractual obligations.

4.  The court finds that, had it not been for Padilla's January 2004 lawsuit against Shell, the gasoline delivery of June 2, 2004 would have taken place and the $35,000 payment would have been received, putting an end to the immediate payment dispute.  The court also finds that the incident leading to Padilla being placed on a

"hard-cash basis" on May 21, 2004 would not have resulted in termination had it not been for the Padilla lawsuit.

5.  Under the circumstances, the court finds that Shell should not be given the benefit of injunctive relief under PMPA.  The termination was motivated mainly by the Padilla lawsuit over the validity of terms and conditions in the franchise agreement.  The failure to timely pay for the product was the excuse Shell needed to terminate without having to arbitrate the Padilla claims over the validity of contract terms and conditions.  It is clear from this record that as late as May 21, 2004, Shell had offered a payment alternative which Padilla was ready to meet.  It is also clear that after Padilla informed he had secured manager's checks to pay in full, the product was promised and not delivered, in order to force Padilla to run out of gas, closing the station for sales of this primary product, thus creating a second cause for termination.  The court also finds that Shell's promise to accept payment in full upon the June 2 promised delivery was a well-planned maneuver to force termination.  In this sense, Shell will not be given injunctive relief against Padilla under PMPA at this time.  The court will not order Padilla to surrender the gas station until this controversy is fully arbitrated as required by the franchise agreement.

6.  The parties will submit proposals for mediation and/or arbitration **within ten (10) days** as required by the agreement.  In the event that the parties fail to promptly act, the court will appoint a mediator/arbitrator pursuant to the Federal Arbitration Act.  The court will order mediation/arbitration to be concluded in

Civil No. 04-2276 (JAF)                                                        -5-

sixty (60) days.  All issues are open to arbitration, including Padilla's claim of null and void contract dispositions, as well as Shell's claims involving their right to terminate the contractual relationship.

The court retains jurisdiction to enforce any arbitration award.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 25th day of October, 2005.

                                          S/José Antonio Fusté
                                            JOSE ANTONIO FUSTE
                                      Chief U. S. District Judge